IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAYDEN VARLINE, BRIAN RICHARDS,
JONICA RICHARDS, JENSEN RICHARDS,
DANIEL PAUL, ELIZABETH PAUL,
ANNETTE SCHAETZL, TREVOR CUNNINGHAM,
EMILY CUNNINGHAM, RICHARD RUBOW,
MICHAEL HEISE, STACY HEISE,
AMANDA ZASTROW, STEVEN ZASTROW,
SCOTT TOWLE, JESSICA TOWLE,
PERRY REDEKER, RUTH REDEKER,
MATTHEW BRILL, JANET OSTROWSKI,                    OPINION and ORDER
TOM FELTZ, THOMAS SULESKI,
JERILYN LANDRUM, LANCE KELLY,                          24-cv-859-jdp
JENNIFER KELLY,
and others similarly situated,

                    Plaintiffs,
  v.

THE 3M COMPANY,

                    Defendant.

---

Plaintiffs are residents of the Village of Maine, Wisconsin, which is in Marathon County near Wausau. They are suing defendant The 3M Company for contaminating the local groundwater, including plaintiffs' private wells, with per- and poly-fluoralkyl substances, commonly known as PFAS. Plaintiffs are asserting claims on behalf of themselves and two putative classes: a personal injury class consisting of individuals who have ingested the contaminated water, and a property damage class consisting of individuals who own the contaminated wells.

3M moves to dismiss multiple portions of plaintiffs' amended complaint, contending that some of plaintiffs lack standing under Federal Rule of Civil Procedure 12(b)(1) and that some of the claims are not adequately pleaded under Federal Rule of Civil Procedure 12(b)(6).

3M's motion will be granted in three respects. Plaintiffs have voluntarily agreed to dismiss the property damage claims brought by Jayden Varline and Jonica Richards. The court will dismiss the personal injury claims for all plaintiffs who have not experienced adverse health effects due to PFAS exposure, because those plaintiffs have not suffered an actual injury under Wisconsin law. The court will dismiss the product liability claims based on a failure-to-warn theory because plaintiffs' allegations affirmatively demonstrate that a warning to product users would not have reduced the risk of harm. The motion to dismiss will be denied in all other respects.

## ALLEGATIONS OF FACT

Plaintiff's first amended class action complaint, Dkt. 14, alleges the following, which the court accepts as true for the purposes of 3M's motion to dismiss.

Since the 1930s, The 3M Company has operated two facilities near the village of Maine for the purpose of mining and processing rock into roofing granules. The Downtown facility, which is in nearby Wausau, is a manufacturing facility for roofing granules. The Graystone facility, which is approximately a mile from the village of Maine, is a quarry where 3M mines rock and crushes it to the appropriate size for roofing granules. 3M also uses the Graystone facility as a disposal site for waste products from the Downtown facility.

3M's roofing granules are coated with PFAS, a class of chemicals with a unique chemical structure that makes them resistant to breakdown. If released into the environment, PFAS accumulate in soil and groundwater; if ingested, PFAS accumulate in the body. Exposure to PFAS is associated with adverse health effects, including high cholesterol, kidney and testicular cancer, ulcerative colitis, and thyroid disease.

In 2023, groundwater testing at the Graystone facility revealed high levels of three types of PFAS: perfluorooctanoic acid (PFOA), perfluorooctanesulfonic acid (PFOS), and N-Ethyl Perfluorooctane Sulfonamide Acetic Acid (NEtFOSAA). Each of these chemicals is manufactured by 3M; PFOS is manufactured exclusively by 3M. The village of Maine draws from the same groundwater source as the Graystone facility, and high levels of PFAS have also been observed in private wells in the village. Residents have been exposed to PFAS from the contaminated wells, which has caused bioaccumulation of PFAS in their bodies and, in some cases, adverse health effects. Property values in the village have decreased due to the contaminated water supply.

ANALYSIS

Plaintiffs are suing for injuries to themselves and their property caused by PFAS contamination from 3M's mining and manufacturing activities. Plaintiffs bring claims on behalf of themselves and two putative classes. The first class is a personal injury class of individuals who have ingested contaminated water and have either suffered adverse health effects or are at risk of adverse health effects in the future. The second class is a property damage class of individuals who own property with contaminated wells. 3M moves to dismiss several portions of the amended complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

A. Standing

To establish this court's jurisdiction, plaintiffs must demonstrate standing for each of their claims and for each form of relief that they seek. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). To demonstrate standing, a plaintiff must show that he (1) suffered an injury

in fact that is (2) fairly traceable to the challenged conduct of the defendant and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

3M's 12(b)(1) motion is a facial challenge to jurisdiction, because 3M contends that plaintiffs' complaint lacks sufficient factual allegations to establish standing. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (facial challenge contends that plaintiff has not alleged subject-matter jurisdiction; factual challenge contends that there is in fact no subject-matter jurisdiction). In reviewing a facial challenge, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Id.*

In this case, 17 of the 25 named plaintiffs have not yet experienced any adverse health effects due to PFAS exposure; instead, they say that they have been injured because PFAS has accumulated within their bodies, putting them at increased risk of disease and requiring them to undergo medical monitoring. 3M moves to dismiss these plaintiffs' personal injury claims, and all the plaintiffs' requests for medical monitoring, arguing that plaintiffs have not established an injury in fact that confers standing for these claims.

To establish injury in fact, a plaintiff must show that he suffered a concrete and particularized invasion of a legally protected interest. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). A concrete injury is an injury that "actually exist[s]," as opposed to a hypothetical or speculative injury. *Id.* at 340. The most common type of concrete injury is a tangible harm like physical injury or monetary loss. *Id.* at 340. But an intangible harm can also be a concrete injury, if it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 340–41 (citing *Pleasant*

4

*Grove City v. Summum,* 555 U.S. 460 (2009) (free speech) and citing *Church of Lukumi Babalu Aye, Inc. v. Hialeah,* 508 U.S. 520 (1993) (free exercise)).

Applying *Spokeo*, the Supreme Court held in *TransUnion v. Ramirez* that the mere risk of future harm, without more, is not a concrete injury for the purpose of a retrospective damages suit. 594 U.S. at 436; *see also Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1152 (7th Cir. 2022). 3M argues that *TransUnion* is dispositive, because the plaintiffs who have not yet experienced any health effects are alleging injury based solely on the likelihood of future harm. Plaintiffs disagree. They say that they have already experienced harm, because PFAS have accumulated at measurable levels within their bodies and because they've spent time and incurred expenses for medical monitoring to protect themselves against the risk of serious illness.

The court agrees that the bioaccumulation of PFAS, and the preventative measures the plaintiffs have taken, are a concrete injury for standing purposes. The Supreme Court last evaluated whether preventative measures could confer standing in *Clapper v. Amnesty International*, 568 U.S. 398 (2013), holding that human rights organizations lacked standing to challenge the Foreign Intelligence Surveillance Act (FISA), because they could not show that their conversations with suspected terrorists had been intercepted by the government. The plaintiffs argued that they had taken costly measures to prevent surveillance, including travelling abroad to communicate with clients in person. But the court rejected that theory of standing, reasoning that the plaintiffs could not "manufacture standing" by taking preventative measures against a purely speculative risk. *Id.* at 415–16.

Interpreting *Clapper*, the Seventh Circuit has held that preventative measures establish standing to sue only if the plaintiffs take those measures based on an "objectively reasonable likelihood" that injury will occur. *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966

5

(7th Cir. 2016). Applying that rule, the court of appeals ruled that data breach victims have standing to sue if they spend time and money to mitigate the risk of identity theft. *Lewert*, 819 F.3d 936, *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694 (7th Cir. 2015).[1] The difference between a data breach case and *Clapper*, the court reasoned, is that data breach victims know that their data has been compromised, so they aren't speculating about the risk of harm. The actual exposure of their data makes the risk of identity theft sufficiently immediate to justify mitigation efforts. *Lewert*, 819 F.3d at 967.

The same result follows in the toxic exposure context. The Fourth Circuit recently addressed a factual scenario similar to this case in *Sommerville v. Union Carbide Corp.*, 149 F.4th 408 (4th Cir. 2025), holding that a plaintiff exposed to toxic ethylene oxide (EtO) gas had standing to bring a medical monitoring claim under West Virginia law. The district court in *Sommerville* ruled that the plaintiff lacked standing to sue under *TransUnion* because her alleged injury was an increased risk of developing cancer in the future. But the court of appeals reversed, reasoning:

> Sommerville's alleged injury is not an "increased risk of cancer development due to the alleged EtO emissions." Sommerville's injury is her exposure *itself* to environmental toxins tortiously emitted by the Plant Owners, which affect the body in ways that often do not become manifest for several years and the concomitant need to pay for medical testing *today* to mitigate an increased risk of illness which Sommerville would not bear but for the Plant Owners' actions.

---

[1] *Lewert* and *Remijas* predate *TransUnion*, but nothing in *TransUnion* calls their holdings into question. The plaintiffs in *Lewert* and *Remijas* didn't rely solely on the likelihood of future injury to establish standing; they alleged that they had already spent time and money mitigating the risks of identity theft. *See Linman v. Marten Transp., Ltd.*, No. 22-cv-204-jdp, 2023 WL 2562712, at *3 (W.D. Wis. Mar. 17, 2023) (concluding that *Lewert* and *Remijas* remain good law after *TransUnion*); *Simonson v. IQ Data Int'l, Inc.*, 698 F. Supp. 3d 1055 (W.D. Wis. 2023) (discussing post-*TransUnion* Seventh Circuit caselaw).

6

*Id.* at 419 (internal quotations and citations omitted).

This court finds *Sommerville* persuasive, particularly considering the Seventh Circuit's similar approach in data breach cases. The plaintiffs in this case allege that have already been exposed to PFAS through their drinking water, which creates a real, non-speculative, risk of harm that justifies preventative medical monitoring. Plaintiffs' medical monitoring expenses are an injury-in-fact, so plaintiffs have Article III standing to sue for damages.

**B. Adequacy of the pleading**

3M also moves to dismiss portions of the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. On a motion to dismiss under Rule 12(b)(6), the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The essential question is whether plaintiff provided defendant with fair notice of her claims and alleged facts plausibly suggesting that she is entitled to relief. *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020).

3M raises multiple issues with the adequacy of the amended complaint. One is undisputed: plaintiffs Jonica Richards and Jayden Varline concede that they cannot bring trespass and nuisance claims against 3M because they lack an ownership interest in the allegedly contaminated property. Those claims will be dismissed.

3M challenges the adequacy of plaintiffs' amended complaint on four other grounds. First, 3M contends that Wisconsin law does not recognize personal injury claims in the absence of present illness. Second, 3M contends that plaintiffs' strict liability claims fail because the risks of 3M's activities could be minimized through reasonable precautions. Third, 3M contends that plaintiffs' failure-to-warn claims fail on statute-of-limitations grounds and

7

because a warning would not have reduced risk in this case. Fourth, 3M contends that plaintiffs have not alleged facts plausibly suggesting that they are entitled to relief under the federal Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA).

### 1. Plaintiffs without present illness

The court already determined that the 17 plaintiffs without any present illness have Article III standing to sue, based on their need for increased medical monitoring to reduce the risk of future illness. 3M also challenges those plaintiffs' personal-injury claims under Rule 12(b)(6), contending that they have not alleged an "actual injury" sufficient to support a personal injury claim under Wisconsin law. 3M's arguments in support of its 12(b)(6) motion are much the same as its arguments in support of its 12(b)(1) motion. But the court's conclusion that plaintiffs suffered an injury-in-fact for standing purposes does not mean that plaintiffs have alleged an actual injury under Wisconsin law. *Cf. Spokeo*, 578 U.S. at 341 (recognizing the distinction between Article III standing and whether plaintiff has stated a cause of action under federal or state law); *Access Living of Metro. Chicago v. Uber Techs., Inc.*, 958 F.3d 604, 608–12 (7th Cir. 2020) (plaintiff alleged a concrete injury for standing purposes but failed to allege that it had been subjected to discrimination under Title III of the Civil Rights Act). 3M's 12(b)(1) motion involved a question of federal constitutional law; 3M's 12(b)(6) motion involves a question of state substantive law.

A personal injury cause of action under Wisconsin law requires both a negligent act and an actual injury. *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 335 N.W.2d 578 (1983). In *Alsteen v. Wauleco, Inc.*, the Wisconsin Court of Appeals examined the actual injury requirement in the context of a toxic chemical exposure. 2011 WI App 105, 335 Wis. 2d 473, 802 N.W.2d 212. The plaintiffs in *Alsteen* were exposed to a variety of carcinogenic chemicals, which leaked

from a manufacturing site into the local air, soil, and water. *Id.* ¶¶ 3–5. Some of the plaintiffs developed health problems as a result, including various cancers. But other plaintiffs did not have any health problems when they filed suit; instead, their alleged injuries were an increased risk of contracting cancer and the necessary expenses for medical monitoring. *Id.* ¶ 6. The court of appeals affirmed the dismissal of the asymptomatic plaintiffs' claims, holding that a personal injury claim under Wisconsin law requires a showing of present, physical injury. *Id.* The court ruled that the plaintiffs had not suffered a physical injury simply by being exposed to toxic chemicals, reasoning that "most people are exposed to a wide variety of environmental contaminants . . . on a daily basis." *Id.* ¶ 18. The court also rejected plaintiffs' assertion that medical monitoring expenses were an injury, reasoning that plaintiffs were trying to "attach a specific item of damages to what is actually a claim for increased risk of future harm." *Id.* ¶ 22.

*Alsteen* is a decision of the Wisconsin Court of Appeals, which this court is obligated to follow when applying Wisconsin law "unless there is a convincing reason to predict the state's highest court would disagree." *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 711 (7th Cir. 2019). The court does not find *Alsteen* particularly persuasive. Although it didn't say it explicitly, the *Alsteen* court appeared to justify its decision on public policy grounds, reasoning that the number of potential tort claimants would be enormous if mere exposure to environmental contaminants were sufficient to give rise to a personal injury claim. *Id.* ¶ 18 ("Tens of millions of individuals may have suffered exposure to substances that might justify some form of substance-exposure-related medical monitoring") (quoting *Metro-N. Commuter R. Co. v. Buckley*, 521 U.S. 424, 442 (1997)). That's a fair concern, but the court's solution is overbroad. Not all toxic exposures present the same risk of future harm: a specific significant exposure that has measurable consequences may give rise to a reasonable need for

9

exposure-related preventative measures, whereas a more diffuse exposure would not. The court's bright-line rule precludes recovery for all asymptomatic plaintiffs, regardless of the severity of exposure, the likelihood of future harm, or the objective reasonableness of the need for medical monitoring.

Despite its reservations, the court will follow *Alsteen* here because plaintiffs provide no reason to predict that the Wisconsin Supreme Court would disagree with *Alsteen*. Instead, plaintiffs have attempted to distinguish *Alsteen*, arguing that the plaintiffs in that case alleged only exposure to toxic substances, not actual accumulation of toxic substances within their bodies. Dkt. 20, at 14. That isn't a material distinction under *Alsteen*, which holds that exposure to a toxin produces no actual injury without a resulting illness. The court will follow Wisconsin precedent and dismiss the personal injury claims of the 17 plaintiffs who did not allege actual health problems caused by PFAS exposure.

The parties don't explain in their briefs what other claims remain for these 17 plaintiffs. Fifteen of them have alleged that they own private wells on their property, so those plaintiffs still have claims against 3M based on damage to their properties. But the court's ruling on the present illness issue appears to resolve all claims for plaintiffs Jensen Richards and Jerilyn Landrum. The court will give Richards and Landrum two weeks to show cause why they should not be dismissed from the case.

### 2. Strict liability claims

Wisconsin law imposes strict liability on those who engage in "abnormally dangerous" activities when doing so results in harm to another. *Grube v. Daun*, 213 Wis. 2d 533, 544, 570 N.W.2d 851 (1997) (citing Restatement (Second) of Torts, §§ 519–520 (1977)). The motion to dismiss turns on whether plaintiffs have pleaded facts suggesting that 3M's mining and

10

manufacturing activities are abnormally dangerous. 3M contends that an activity is only abnormally dangerous if its risks cannot be minimized with reasonable precautions, which 3M says plaintiffs haven't adequately alleged in the amended complaint.

In their response brief, plaintiffs appear to take the position that inability to minimize risk is not an element of a strict liability claim, but they don't develop an argument on that issue. Some of the authority cited by both parties appears to support plaintiffs' position. Wisconsin courts have adopted the test from the Restatement (Second) of Torts § 520 to determine whether an activity is abnormally dangerous. *Bennett v. Larsen Co.,* 118 Wis. 2d 681, 703, 348 N.W.2d 540 (1984). Under that test, inability to eliminate risk is just one of six factors that courts should consider in determining whether an activity is abnormally dangerous. The Wisconsin Supreme Court has advised that the Restatement factors "are interrelated and should be considered as a whole, with weight being apportioned by the court in accordance with the facts in evidence." *Grube*, 213 Wis. 2d at 545; *see also Fortier v. Flambeau Plastics Co., a Div. of Flambeau Corp.*, 164 Wis. 2d 639, 668, 476 N.W.2d 593 (Ct. App. 1991). That implies that, if the other factors are present, a plaintiff could theoretically prove that an activity is abnormally dangerous without proving that its risk cannot be minimized through the exercise of reasonable precautions.

In any event, it is not necessary to decide at this juncture whether plaintiffs will have to show an inability to minimize risk, because the amended complaint is adequate either way. Plaintiffs allege that PFAS readily contaminate soil, dissolve in water, are resistant to breakdown, and bioaccumulate in organisms, including humans. Dkt. 14, ¶¶ 56–64. That's sufficient to allow for a plausible inference that the risk of dumping PFAS-contaminated roofing materials into the environment cannot be minimized through the exercise of reasonable

11

precautions. The court concludes that plaintiffs have adequately pleaded a strict liability claim based on abnormally dangerous activities.

3M argues that plaintiffs have pleaded themselves out of court because they affirmatively alleged in the amended complaint that 3M *could* have taken precautions to minimize the risks of its activities. Dkt. 19, at 16 (citing amended complaint, Dkt. 14, ¶¶ 212, 214, 71, 84, 206–07). But in their response brief, plaintiffs explain that they made those allegations in support of their negligence claims, which they are pleading in the alternative to the strict liability claims. Plaintiffs are entitled to plead in the alternative under Federal Rule of Civil Procedure 8(d)(2) and (3). 3M's motion to dismiss plaintiffs' strict liability claims will be denied.

### 3. Failure-to-warn claims

Plaintiffs assert a products liability claim against 3M under a failure-to-warn theory. Wis. Stat. § 895.047 imposes strict liability on manufacturers who produce defective products, including products that are defective because of lack of proper warnings. *See* Wis. JI-Civil § 3260.1. To state a claim under a failure-to-warn theory, a plaintiff must allege that the "foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the manufacturer and the omission of the instructions or warnings renders the product not reasonably safe." Wis. Stat. § 895.047(1)(a). Plaintiffs assert that if 3M had warned the public that its PFAS-containing products were likely to contaminate groundwater, plaintiffs could have taken precautionary steps to prevent exposure. Dkt. 20, at 25–26.

3M contends that the failure-to-warn claims should be dismissed for two reasons. First, it says that plaintiffs' claims are time-barred under Wis. Stat. § 895.047(5), which imposes a

15-year statute of repose on most products liability claims. Second, it says that plaintiffs' allegations make clear that a warning wouldn't have reduced the risk of harm in this case. The second reason is dispositive, so the court will grant defendants' motion to dismiss on that basis without considering the statute of repose.

The fundamental problem for plaintiffs is that 3M itself disposed of the PFAS-contaminated roofing granules at the Graystone facility, so a warning could not have made a difference in this case. Under Wisconsin law, "a product is defective based on a failure to warn when an intended use of the product is dangerous, but the manufacturer did not provide sufficient warning or instruction" to mitigate the risk. *Godoy ex rel. Gramling v. E.I. du Pont de Nemours & Co.*, 2009 WI 78, ¶ 29, 319 Wis. 2d 91, 768 N.W.2d 674. Whether a product is dangerous is evaluated from the perspective of a reasonable user of the product, not from the perspective of bystanders or the public. *Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, ¶ 40, 245 Wis. 2d 772, 629 N.W.2d 727; *Horst v. Deere & Co.*, 2009 WI 75, ¶ 77, 319 Wis. 2d 147, 769 N.W.2d 536.[2] Because product liability claims focus on whether the intended use of the product is dangerous, it follows that the warnings must be directed at the product's users. A bystander who is injured because a manufacturer failed to provide adequate warnings to users can still bring suit, but there is no duty to warn about dangers that are unique to bystanders. *Horst*, 2009 WI 75, ¶ 77.

---

[2] *Green* was decided under a common-law approach to strict liability, which was the law in Wisconsin until 2011, when it was superseded by Wis. Stat. § 895.047. But the Wisconsin Supreme Court has held that § 895.047 did not change the rule that the dangerousness of a product is evaluated from the perspective of a reasonable user. *Murphy v. Columbus McKinnon Corp.*, 2022 WI 109, 405 Wis. 2d 157, 982 N.W.2d 898.

13

A recent PFAS case from this court illustrates the principle. In *Rougeau v. Ahlstrom Rhinelander, LLC*, 785 F. Supp. 3d 438 (W.D. Wis. 2025), plaintiffs alleged that 3M sold PFAS products to paper mills, who then spread millions of pounds of PFAS-contaminated sludge onto local farmland, where it leached onto the plaintiffs' property and into their drinking water. *Id.* at 445. This court declined to dismiss plaintiffs' failure-to-warn claim against 3M under Wis. Stat. § 895.047, concluding that plaintiffs had stated a claim by alleging that 3M failed to warn the paper mills that standard use and disposal of its PFAS products could contaminate soil and groundwater. *Id.* at 452–53. In *Rogeau*, it was the product users who dumped PFAS into the environment, so a warning could theoretically have prevented the dumping. But in this case, plaintiffs allege that 3M itself disposed of the PFAS-contaminated roofing granules at the Graystone facility. No warning could have prevented that.

Plaintiffs don't identify in their response brief who specifically 3M should have warned about the environmental risks of their products. Plaintiffs say generally that "had 3M properly warned about the risks associated with these materials, regulatory agencies, third-party handlers, and the public could have taken necessary precautions to prevent or mitigate the contamination." Dkt. 20, at 25–26. But this amounts to an assertion that 3M was required to warn everyone about the risks posed by their products. Products liability law doesn't impose such a wide-ranging duty to warn.

4.  **CERCLA claims**

The Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) is a federal law that imposes liability for the cleanup of hazardous substances released into the environment. The purpose of the law is "to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those

14

responsible for the contamination." *Bernstein v. Bankert*, 733 F.3d 190, 200 (7th Cir. 2013). Plaintiffs bring two claims under CERCLA. First, they bring a cost-recovery claim for the "necessary costs of response" to clean up their PFAS-contaminated wells. 42 U.S.C. § 9607(a)(4)(B); *Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459 (7th Cir. 2012). Second, they seek a declaratory judgment that they are also entitled to future response costs. *See* 42 U.S.C. § 9613(g)(2).

3M contends that plaintiffs' CERCLA claims fail because they haven't alleged facts plausibly suggesting that they've incurred response costs cleaning up their private wells. Under CERCLA, response costs are those that are (1) necessary; (2) related to "removal" or "remediation" of the hazardous site as those terms are defined in CERCLA; and (3) incurred in compliance with the EPA's national contingency plan, which is a set of standards governing the clean-up of hazardous substances. 42 U.S.C. § 9601(23)–(25), (31); § 9607(a)(4)(B). 3M says that plaintiffs have simply alleged in conclusory fashion that they've incurred response costs, which isn't enough to state a plausible claim for relief.

3M's motion to dismiss the CERCLA claims will be denied. Under Federal Rule of Civil Procedure 8(a), plaintiffs are required to include in the complaint "a short and plain statement of the claim[s]" to give 3M fair notice of each of the claims "and the grounds upon which [they] rest[ ]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Plaintiffs are not obligated to plead "facts that bear on the statutory elements of a claim." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017). "It is enough to plead a plausible claim, after which 'a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.' *Id*. (quoting *Twombly*, 550 U.S. at 563).

3M is correct that the cost-recovery allegations in the amended complaint are somewhat thin. Plaintiffs simply allege that they've "incurred and will continue to incur necessary response costs to address the release or threatened release of hazardous substances and PFAS from Defendant's facility." Dkt. 14, ¶ 227. But earlier in the complaint, plaintiffs describe the nature of the PFAS contamination in detail, including the types of PFAS involved and how it got into plaintiffs' wells. That's enough to allow for plausible inferences about what kind of remedial measures plaintiffs might have taken, so plaintiffs' allegations are sufficient to give 3M fair notice of the CERCLA claims.

3M also argues that plaintiffs have not pleaded compliance with the EPA's national contingency plan, which it says is necessary to recover costs under CERCLA. In response, plaintiffs said that compliance with the national contingency plan is not a required element of their CERCLA claims, because they could recover at least some costs even if they didn't comply. 3M disagreed with that position on reply, but its argument was undeveloped. The court will not dismiss plaintiffs' CERCLA claims at this juncture based on a failure to plead compliance with the national contingency plan. If 3M believes that plaintiffs' lack of compliance bars their claims, it should develop an argument on that issue on summary judgment.

## ORDER

IT IS ORDERED that:

1. Defendant The 3M Company's motion to dismiss the amended complaint, Dkt. 18, is GRANTED in part. The motion is granted as to the following claims:

    a. Plaintiff Jayden Varline and Jonica Richard's nuisance and trespass claims;

    b. the personal injury claims for the plaintiffs who have not alleged a present illness due to PFAS exposure;

      c. the products liability claims based on failure-to-warn.

2. 3M's motion to dismiss is otherwise DENIED.

3. Plaintiffs Jensen Richards and Jerilyn Landrum have until March 27, 2026 to show cause why they should not be dismissed from the case.

Entered March 13, 2026.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge